# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|                                  |   |                        |
|----------------------------------|---|------------------------|
| **ASHER & SIMONS, P.A.,** *et al.*, | * |                        |
| Plaintiffs                       | * |                        |
| v.                               | * | CIVIL No. JKB-13-0981  |
| **J2 GLOBAL CANADA, INC.,** *et al.*, | * |                        |
| Defendants                       | * |                        |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Asher & Simons, P.A. and Dr. Stuart T. Zaller, LLC ("Plaintiffs") brought this suit against j2 Global, Inc., j2 Global Canada, Inc., Wellington Wreaths, LLC, and several individuals ("Defendants") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN. COM. LAW § 14-3201. Now pending before the Court are Defendant j2 Global, Inc.'s ("j2 Global") motion to dismiss for lack of personal jurisdiction (ECF No. 30), Plaintiffs' motion to strike Defendant j2 Global Canada Inc.'s ("j2 Canada") affirmative defenses (ECF No. 44), Plaintiffs' motion for partial summary judgment (ECF No. 45), and Plaintiff Asher & Simons' motion for default judgment against Wellington Wreaths, LLC ("Wellington") (ECF No. 52). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, j2 Global's motion to dismiss for lack of personal jurisdiction will be GRANTED, Plaintiffs' motion to strike j2 Canada's affirmative defenses will be DENIED, Plaintiffs' motion

for partial summary judgment will be GRANTED, and Asher & Simons' motion for default judgment will be GRANTED.

## I. BACKGROUND

Plaintiffs allege that Defendants "sent, or aided and abetted or conspired to send" unsolicited facsimile advertisements to Plaintiffs during the period from May 11, 2010 through January 31, 2013. (*See* Am. Compl., ECF No. 12.) The fax messages allegedly did not include the legally required opt-out notice. Plaintiffs allege that they "suffered actual damages including the loss of paper and toner, and nuisance, as a result of the receipt of unsolicited fax ads." (*Id.* ¶ 31.)

Plaintiffs allege that j2 Global is the parent company of j2 Canada, which "regularly transmits large numbers of fax ads into Maryland, with the knowledge and approval of" j2 Global. (*Id.* ¶ 39.) According to the amended complaint, j2 Global "is regularly updated on, has knowledge of, and directs [j2 Canada]'s regular business of sending large numbers of fax ads and related services as described above and herein, including through [j2 Canada] employee Allen Tough." (*Id.* ¶ 57.) Plaintiffs allege that j2 Global is the alter ego of j2 Canada, "at least with respect to sending unsolicited fax ads."

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(2) is a test of the court's personal jurisdiction over the defendant. "[W]hen, as here, the court addresses the question [of personal jurisdiction] on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v.*

*Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  The court must construe the relevant allegations in the light most favorable to the plaintiff.  *Id.*

Fed. R. Civ. P. 12(f) permits district courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions under Rule 12(f) are generally disfavored and should be granted infrequently. *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores*, 227 Fed. App'x. 239, 247 (4th Cir. 2007).  "Nevertheless, a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted."  5C Wright & Miller, FED. PRAC. PROC. CIV. § 1380, 647 (3d ed. 2011).  Furthermore, "the disfavored character of Rule 12(f) is relaxed in the context of scandalous allegations," i.e., those that "improperly cast a derogatory light on someone." *Id.* § 1382.  The decision to grant or deny a motion under Rule 12(f) is discretionary. *Renaissance Greeting Cards,* 227 Fed. App'x. at 246.

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial.  FED. R. CIV. P. 56(e)(2).  To carry these respective burdens, each party must support its assertions by citing specific evidence from the record.  FED. R. CIV. P. 56(c)(1)(A).  The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

Except in limited circumstances, parties "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2). The district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered. 10A Wright & Miller, FED. PRAC. PROC. CIV. § 2685 (3d ed. 2011). "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing" to resolve the default issue. FED. R. CIV. P. 55(b)(2).

### III. ANALYSIS

#### A. j2 Global's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant j2 Global moves to dismiss the claims against it for lack of personal jurisdiction. At a minimum, Plaintiffs must make a *prima facie* showing that personal jurisdiction exists, "which must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts." 4 Wright & Miller, FED. PRAC. PROC. CIV. § 1067.6 (collecting cases).

Plaintiffs have failed to meet their burden, because they have not offered any evidence beyond the allegations in the pleadings to establish that the Court has personal jurisdiction over j2 Global. In their response to j2 Global's motion, Plaintiffs assert that j2 Global is not a party to this suit. (Pls. Opp. to Mot. to Dismiss for Lack of Personal Jurisdiction at 1-2, ECF No. 32.) They state that the party that filed the motion is named j2 Global, Inc., and the party named in the amended complaint is j2 Global Communications, Inc. (*Id.*) Plaintiffs also allege that they have evidence that the party that is a defendant in this action received regular reports from representatives of its co-Defendants about the misconduct alleged in this case. (*Id.*) Plaintiffs make it clear that they intend to present those facts to the Court as necessary if the company "that is an actual Defendant in this suit" were to file a motion to dismiss. (*Id.*)

4

In its reply brief, j2 Global explains that the entity known as j2 Global Communications, Inc. changed its name to j2 Global, Inc. on December 5, 2011, as reflected in forms filed with the Securities and Exchange Commission. (Pl. Reply Br. at 1-2, ECF No. 41.) In addition, j2 Global noted this fact in its notice of removal to this Court and other documents filed in this case. (*See id.*) These documents reflect that j2 Global is a party to this action.

Even construing the allegations in the amended complaint in the light most favorable to Plaintiffs, they are insufficient to support the existence of personal jurisdiction. Plaintiffs allege in general terms that j2 Global aided or conspired to send the unsolicited faxes at issue. Plaintiffs further allege that j2 Global "had a high degree of involvement in, and actual notice of, the unlawful activity," but they allege no facts to support this legal conclusion. (Am. Compl. ¶ 36.) Similarly, Plaintiffs allege that j2 Global "is regularly updated on, has knowledge of, and directs [j2 Canada's] regular business sending large numbers of fax ads and related services." (*Id.* ¶ 57.)

In response to these allegations, j2 Global submitted an affidavit attesting that it (1) has only negligible contacts with Maryland; (2) does not oversee the day-to-day activity of j2 Canada; (3) did not authorize, approve or direct the sending of the faxes at issue; and (4) did not have any knowledge of the faxes at issue. (*See* ECF No. 30-2.) Plaintiffs had the chance to provide affidavits or other evidence to support the allegations in their pleadings and contest j2 Global's affidavit; as described above, Plaintiffs declined that opportunity. Plaintiffs have not met their burden of establishing personal jurisdiction or even a *prima facie* case of personal jurisdiction. Therefore, the Court will dismiss the claims against j2 Global for lack of personal jurisdiction.

## B. Plaintiffs' Motion to Strike Affirmative Defenses

Plaintiffs move to strike all of the 21 affirmative defenses set out in j2 Canada's answer to the amended complaint. As noted above, motions under Rule 12(f) are disfavored. For that reason, federal courts generally require the moving party to establish that the materials to be struck prejudice the moving party in some way. 5C Wright & Miller, FED. PRAC. PROC. CIV. § 1381 n.34 (collecting cases). Plaintiffs' motion to strike does not suggest that any of the 21 affirmative defenses are prejudicial to it. Furthermore, rather than presenting a targeted motion to strike specific prejudicial material, Plaintiffs move to strike every affirmative defense in j2 Canada's answer.

The issues raised by Plaintiffs' motion to strike should have been raised in motions for summary judgment. If Plaintiffs had presented thorough arguments that j2 Canada's affirmative defenses are insufficient as a matter of law, the Court would have considered converting the motion to strike into a motion for summary judgment. However, Plaintiffs' submission gives at most a cursory analysis of each defense and an invitation for the Court to fill in the blanks. The analysis, which addresses each of the 21 affirmative defenses in turn, does not even fill ten pages. The moving party has the obligation to present fully-developed factual and legal arguments in support of its motion. Therefore, the Court will deny Plaintiffs' motion to strike j2 Canada's affirmative defenses.

## C. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on Defendant j2 Canada's tenth affirmative defense, which states: "Any claim alleged in the Amended Complaint is barred because j2 Canada did not have a high degree of involvement in the sending of the facsimiles at issue in the Amended Complaint." (j2 Canada's Answer to Am. Compl. at 15.) The basis for the defense is an FCC regulation that prohibits use of a fax machine "to send an unsolicited advertisement," but

exempts "facsimile broadcasters" from liability unless it is demonstrates "a high degree of involvement in, or actual notice of, the unlawful activity." 47 C.F.R. § 64.1200(a)(3). The same FCC regulation defines the term "sender," for purposes of a subsection of the FCC regulation, as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." *Id.* § 64.1200(f)(10). Defendant j2 Canada argues that this FCC regulation provides "that a facsimile broadcaster may be liable for a violation of the TCPA only if it 'demonstrates a high degree of involvement in, or actual notice of, the unlawful activity.'"

Defendant j2 Canada's argument is a step too far. The Court recognizes that Congress explicitly granted the FCC authority to prescribe regulations to implement the requirements of the TCPA. However, the FCC regulations on which j2 Canada attempts to rely do not speak to Plaintiffs' claim. By its very terms, the exemption for facsimile broadcasters is limited to liability for violations of the FCC regulation itself, not the TCPA. *Id.* § 64.1200(a)(3)(vii) (a "facsimile broadcaster will be liable for violations of paragraph (a)(3) of this section . . ."). The question is not whether the Court owes deference to this regulation; it does, but the exemption in the regulation does not apply to the statute at issue.

The regulation's definition of the term "sender" is similarly inapplicable. The relevant provision of the TCPA prohibits the use of "any telephone facsimile machine, computer, or other device *to send*, to a telephone facsimile machine, an unsolicited advertisement," unless certain conditions are met. 47 U.S.C. § 227(b)(1)(C) (emphasis added). The regulation does not define the term "to send," so there is no interpretation of that term to which the Court owes deference. In addition, although the FCC regulation defines the term "sender," that definition incorporates

7

the idea that some other person is performing *the act of sending* the fax.[1] *See* 47 C.F.R. § 64.1200(f)(10) (sender is "the person . . . on whose behalf a [fax] is sent"). The language of the regulation allows for the fact that the "sender" may not be the person who actually performs the act of sending. Therefore, the FCC regulation does not limit j2 Canada's potential liability under the TCPA, and the Court will grant summary judgment in Plaintiffs' favor, thereby disposing of j2 Canada's tenth affirmative defense.

### D. Asher & Simons' Motion for Default Judgment

Asher & Simons moves for default judgment against Wellington in connection with an unsolicited fax advertisement. On May 28, 2013, the Clerk of the Court entered an order of default against Wellington. (ECF No. 36.) Asher & Simons alleges that it received an unsolicited fax ad from Wellington on November 4, 2010, and that it had not previously given written or oral permission to Wellington. Asher & Simons seeks treble statutory damages and injunctive relief under the TCPA, and damages and reasonable attorneys' fees under the MCPA.

A claim under the relevant provision of the TCPA has the following elements: (1) use of a facsimile machine (2) to send to a telephone facsimile machine (3) an unsolicited advertisement, (4) in the absence of an established business relationship, permission or invitation. *See* 47 U.S.C. § 227(b)(1)(C). A claim for violation of the MCPA has the same elements. *See* MD. CODE ANN. COM. LAW § 14-3201. Asher & Simons attached a copy of the offending facsimile to its motion for default judgment. It also attached an affidavit from its office manager attesting that it has no relationship with Wellington, that it did not give invitation or permission for Wellington to send the fax, and that its office practice is not to distribute the

---

[1] Furthermore, just as with the exemption for facsimile broadcasters discussed above, the very terms of the definition of the term "sender" limit its applicability to the FCC regulation itself. *See* 47 C.F.R. § 64.1200(f)(10) ("for purposes of paragraph a(4) of this section . . .").

8

fax number to anyone other than clients and people with business needs. (ECF No. 52-2.) This evidence is a reasonable basis for default judgment in Asher & Simons' favor.

The TCPA provides for $500 statutory damages for each violation. 47 U.S.C. § 227(b)(3). The statute also allows the Court to award treble damages, in its discretion, for willful or knowing violations of the law. Asher & Simons has not demonstrated that Wellington's violation was willful or knowing, and even if it had, the Court would not award treble damages for a single, seemingly isolated violation of the TCPA. Similarly, injunctive relief is not required to address a single violation. Therefore, the Court will award Asher & Simons $500 statutory damages.

Under the MCPA, Asher & Simons seeks its actual damages of five cents, its costs of service of $11.92, and $900 of attorneys' fees. The Court will award Asher & Simons its actual damages of five cents, its costs of service of $11.92, and reasonable attorneys' fees of $50. Therefore, the total damages the Court will award against Wellington are $561.97.

In light of Wellington's consent to removal of this case to this Court, it must receive seven days of notice before the Court grants the motion for default judgment. Therefore, the Court will stay its grant of the motion for default judgment and award of $561.97 for seven days to allow Wellington to respond to this motion.

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING Defendant j2 Global Communications, Inc.'s motion to dismiss for lack of personal jurisdiction (ECF No. 30), DENYING Plaintiffs' motion to strike Defendant j2 Global Canada Inc.'s affirmative defenses (ECF No. 44), GRANTING Plaintiffs' motion for partial summary judgment (ECF No. 45), GRANTING Plaintiff Asher & Simons' motion for default judgment against Wellington (ECF

No. 52), ENTERING judgment in favor of Plaintiff Asher & Simons against Defendant Wellington in the amount of $561.97, and STAYING for seven days the resolution and judgment on Plaintiff Asher & Simons' motion for default judgment against Wellington.


Dated this 28th day of August, 2013

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge