FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 OCT 16 P 12: 05

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASHER & SIMONS, P.A., *et al.*,

   Plaintiffs

v.     CIVIL No. JKB-13-0981

J2 GLOBAL CANADA, INC., *et al.*,

   Defendants

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Asher & Simons, P.A. and Dr. Stuart T. Zaller, LLC ("Plaintiffs") brought this suit against j2 Global, Inc., j2 Global Canada, Inc., Wellington Wreaths, LLC, and several individuals ("Defendants") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN. COM. LAW § 14-3201. Now pending before the Court is Defendant j2 Global Canada Inc.'s ("j2 Canada") motion (ECF No. 62) for the Court to reconsider the order granting Plaintiffs' motion for partial summary judgment, (ECF No. 60), and the accompanying memorandum, (ECF No. 59), and to deny plaintiffs' motion for partial summary judgment. (ECF No. 45). For the reasons set forth below, j2 Canada's motion to reconsider will be GRANTED and plaintiffs' motion for partial summary judgment will be DENIED.

### I. BACKGROUND

Plaintiffs allege that Defendants "sent, or aided and abetted or conspired to send" unsolicited facsimile advertisements to Plaintiffs during the period from May 11, 2010 through

January 31, 2013. (*See* Am. Compl., ECF No. 12.) Plaintiffs allege that they "suffered actual damages including the loss of paper and toner, and nuisance, as a result of the receipt of unsolicited fax ads." (*Id.* ¶ 31).

On May 1, 2013, j2 Canada filed its answer and special defenses. (ECF No. 29). As its tenth affirmative defense, j2 Canada pled that "[a]ny claim alleged in the Amended Complaint is barred because j2 Canada did not have a high degree of involvement in the sending of facsimiles at issue in the Amended Complaint." (*Id.* at 15). On June 10, Plaintiffs filed a motion for partial summary judgment regarding j2 Canada's tenth affirmative defense. (ECF No. 45). On September 3, this Court granted Plaintiffs' motion, (ECF No. 60), and, on September 17, j2 Canada filed the present motion for reconsideration. (ECF No. 62).

## II. LEGAL STANDARD

### a. Motion for reconsideration

Rule 54(b) of the Federal Rules of Civil Procedure provides that "any order or other decision, however designated, . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See Fayetteville Investors v. Commercial Builders Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject for reconsideration at any time prior to the entry of a final judgment."). Local Rule 105.10 further provides that "any motion to reconsider any order issued by the Court shall be filed with the Clerk no later than fourteen (14) days after entry of the order."

The power to reconsider an order is "committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphty Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). In exercising this discretion, courts must be sensitive to "concerns of finality and judicial economy." *Id.* However,

2

the "ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Id.*

### b. Motion for summary judgment

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. FED. R. CIV. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## III. ANALYSIS

At issue is j2 Canada's tenth affirmative defense, which states that "[a]ny claim alleged in the Amended Complaint is barred because j2 Canada did not have a high degree of involvement in the sending of the facsimiles at issue in the Amended Complaint." (ECF No. 25 at 15). J2 Canada's basis for this claim is a rule promulgated by the Federal Communications Commission ("FCC"), pursuant to the TCPA, which provides that "a facsimile broadcaster will be liable for violations of paragraph (a)(4) of this section . . . if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(4)(vii). Plaintiffs have sought summary judgment on this affirmative defense on the basis that "liability for any sender under the TCPA,

3

including j2 Canada, arises directly from the plain and ambiguous language of the TCPA, regardless of any additional liability imposed under the FCC's regulation." (ECF No. 45 at 1).

After considering the plain-meaning of the FCPA, as well as the FCC rule at issue, this Court granted Plaintiffs' motion for partial summary judgment with regard to this affirmative defense. 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. §641200(a)(3); (ECF No. 59). However, in light of extensive briefing in the context of this motion for reconsideration and review of persuasive authority, the Court finds reason to reconsider its prior ruling.

This Court begins by considering whether the framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837 (1984), applies in the present case. In *Chevron*, the Supreme Court held that "ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps, the Court explained, involves difficult policy choices that agencies are better equipped to make than courts." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005) (citing *Chevron*, 467 U.S. at 865-66).

Here, the TCPA is within the FCC's jurisdiction to administer. As this Court has held in the past and continues to hold today, the FCC is "charged with the responsibility of implementing regulations to support the TCPA." *Worsham v. Acct. Receivables Mgmt., Inc.*, No. JKB-10-3051, 2011 WL 5873107 at *5 (D. Md., Nov. 22, 2011). Congress has delegated to the FCC the authority to "prescribe regulations to implement the requirements of" 47 U.S.C. 227(b). 47 U.S.C. § 227 (b)(2). *See also* H. Rep. No. 102-317 at 6 (1991) ("The [FCC] is also required to conduct a separate rulemaking to prescribe rules to restrict the use of any telephone facsimile machine, computer, or other electronic device to send unsolicited advertisement.").

Plaintiffs argue that the FCC's regulatory authority with regard to the TCPA is limited to the issues set forth in subparagraphs (A) through (G) of paragraph (b)(2) of the TCPA, which is entitled "Regulations; exemption and provisions." However, the first sentence of paragraph (b)(2) provides that "[t]he Commission shall prescribe regulations to implement the requirements of this subsection." The next sentence, which introduces subparagraphs (A) through (G), reads "[i]n implementing the requirements the requirements of this subsection, the Commission--." Therefore, while subparagraphs (A) through (G) provide the FCC with guidance—mandatory in part and permissive in others—they do not change the fact that Congress charged the FCC with prescribing regulations to implement the entirety of subsection (b), which includes the prohibition on the "use of] any facsimile machine, computer, or other device to send, to a telephone facsimile machine an unsolicited advertisement," §227(b)(1)(C), and the creation of a private right of action under the TCPA. §227(b)(3).

The FCC rule at issue in this case is one that it has issued pursuant to this Congressional mandate. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 18 F.C.C.R. 14014 (2003) (*2003 TCPA Order*). In relevant part, it provides that a facsimile broadcaster will be liable for violations of paragraph (a)(4) of this section[, which prohibits the 'use of a telephone facsimile machine . . . to send an unsolicited advertisement to a facsimile machine,'] . . . if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200 (a)(4)(vii). The rule also defines the term 'facsimile broadcaster' as "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." § 64.1200 (f)(7). This Court must therefore apply

5

the *Chevron* framework in evaluating this rule, which was promulgated by the FCC pursuant to a congressional delegation of authority. 467 U.S. 837.

As the Fourth Circuit has explained, the first step in the *Chevron* analysis is whether "Congress has directly spoken to the precise question at issue," such that "the intent of Congress is clear." *Nat'l Elec. Mfrs. Ass'n v. Dept. of Energy*, 654 F.3d 496, 504 (4th Cir. 2011) (quoting *Chevron*, 467 U.S. at 842-43). If it is, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*

Courts begin this analysis with the text and structure of the statute. *Id.* (citing *Cabell Huntington Hosp. Inc. v. Shalala,* 101 F.3d 984, 986 (4th Cir. 1996)). However, the Fourth Circuit has also "described legislative history as one of the traditional tools of interpretation to be consulted at *Chevron's* step one." *Id.* (citing *Elm Grove Coal Co. v. Dir., O.W.C.P.*, 480 F.3d 278, 293-94 (4th Cir. 2007). Further, the Supreme Court has cautioned "that '[f]ew phrases in a complex scheme of regulation are so clear as to be beyond the need for interpretation when applied in a real context.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 418 (1992)).

At first blush, the text of the statute in the case at bar appears unambiguous. Indeed, the TCPA provides that "[i]t shall be unlawful for any person . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). However, where an advertiser pays a fax broadcasting service to send an unsolicited advertisement over the network of a common carrier, it is unclear who is sending the advertisement. To place this question in a more familiar context, when someone sends a package to a third party by bringing the package to the post office, who is sending the package? Is it the person who brings the package to the post office? Is it the clerk at

the post office who accepts the package and the payment for its delivery? Is it the mail carrier who delivers the package to the recipient's door? The TCPA's legislative history confirms that the meaning of "to send" in this statute is ambiguous. Indeed, the Senate Report explains that the law applies "to the persons initiating the telephone call or sending the message and do[es] not apply to the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message." S. Rep. No. 102-178, at 9 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1977); *see also Kopff v. Bataglia*, 425 F.Supp.2d 76, 92 (D.D.C. 2006) ("Although there is legislative history to indicate an intent by Senate drafters of the TCPA that only the 'originator or controller of the content of the call or message' would be liable under the statute . . . the text of the statute does not make that clear."). The Court therefore finds that the intent of Congress is not clear with regard to the meaning of the verb "to send" and therefore the scope of liability under the statute.

Where, as here, the statutory language is "susceptible to more precise definition and open to varying constructions," the Court applies the second step of the *Chevron* framework. *Nat'l Elec. Mfrs. Ass'n*, 654 F.3d at 505 (quoting *United Seniors Ass'n, Inc. v. Social Security Admin.*, 423 F.3d 397, 403 (4th Cir. 2005)). In this second step, the Court simply ensures that the interpreting agency's construction is reasonable. *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 980 (2005). Federal courts must accept the agency's reasonable construction of the statute even it is "not be the best or most natural one." *Id*; *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991).

Here, the Court finds that the FCC's construction of the statute is reasonable. The rule reflects the FCC's policy judgment regarding fax broadcaster liability under the statute. As the FCC explains "if the company whose products are advertised has supplied the list of fax

7

numbers, that company is in the best position to ensure that recipients have consented to receive the faxes and should be liable for violations of the prohibition. Therefore the fax broadcaster will not be responsible for the ads, in the absence of any other close involvement, such as determining the content of the faxed message." *2003 TCPA Order*, 18 F.C.C.R. at 14131. Further, this rule mirrors the FCC's long-standing interpretation of common carrier liability. *Id.* (citing *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 F.C.C.R. 2819, 2820 (1987)).

Plaintiffs argue that the FCC does not have the authority to create a limited fax broadcaster exemption from TCPA liability. In support of this proposition, Plaintiffs cite a footnote in an FCC order, which reads: "[i]n banning telephone facsimile advertisements, the TCPA leaves the Commission without discretion to create exemptions from or limit the effects of the prohibition." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 7 F.C.C.R. 8752, 8784 n.87 (1992) (*1992 TCPA Order*). However, first, a reading of the complete footnote reveals that the comment is in reference to a proposal to create a "telephone facsimile do-not-call list . . . in lieu of a complete prohibition on such unsolicited advertisements." *Id.* Such a do-not-call list would have allowed unsolicited fax advertisements to be sent to any number not on the list, insulating fax broadcasters and advertisers from liability. This is a markedly different issue from the question in this case, which is whether an advertiser and a fax broadcaster are *both* liable for unsolicited fax advertising or whether, under certain conditions, a fax broadcaster might avoid liability. Second, the text of the order specifically provides that "carriers who simply provide transmission facilities to transmit others' unsolicited advertisements . . . will not be held liable for the transmission of a prohibited facsimile message [absent a high degree of involvement or actual notice of an illegal use and

failure to take steps to prevent such transmissions]." As a result, the Court does not find Plainitffs' citation to the 1992 TCPA Order compelling.

This Court therefore finds that interpreting the TCPA's prohibition on sending unsolicited advertisements to apply to fax broadcasters only when they demonstrate "a high degree of involvement in, or actual notice of, the unlawful activity and fail[] to take steps to prevent such facsimile transmissions" is a reasonable construction of the statutory language. 47 C.F.R. § 64.1200 (a)(4)(vii).

This *Chevron* analysis applies even in the context of a private action. This past term, the Supreme Court clarified that in the context of a private right of action, an agency has the "authority to promulgate the substantive standards enforced through the private right of action." *City of Arlington, Tex. v. FCC*, 133 S.Ct. 1863, 1871 n.3 (citing *Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990)). Here, the FCC has interpreted the meaning of the TCPA's prohibition on the "use of any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). This provision provides the substantive standard that parties can enforce through the statute's private right of action. § 227(b)(3). Further, the Court further notes that the provision granting a private right of action explicitly contemplates "an action based on a violation of this subsection or the regulations prescribed under this subsection." § 227(b)(3)(A).Therefore, under *City of Arlington*, The FCC's rule, interpreting the substantive standards of §227(b)(1), is entitled to *Chevron* deference even in the context of a private action under § 227(b)(3).[1]

---

[1] The *City of Arlington* opinion goes on to specify that "*Adams Fruit* stands for the modest proposition that the Judiciary, not any executive agency, determines 'the scope'—including the available remedies—'of judicial power vested by statutes establishing private rights of action." 133 S.Ct. at 1871 n.3 (quoting *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 650 (1990). The Court finds that the FCC dutifully deferred to the judiciary in refusing to interpret the jurisdictional priovision contained in §227(b)(3), which provides that "[a] person or entity may, if otherwise permitted by the laws or rules of a court of the State, bring in an appropriate court of the State." *2003 TCPA Order*, 18 F.C.C.R. at 14136 ("The Commission declines to make any determination about the specific contours of the

9

In other private actions against fax broadcasting companies, sister courts have deferred to the FCC's interpretation of the TCPA. *See Pasco v. Protus IP Solutions, Inc.*, 826 F.Supp.2d 825, 841 (D. Md. 2011) ("Because this Court concludes that the FCC's regulations construing the TCPA are based on a permissible construction of the statute and are reasonable, the issue becomes whether Protus[,the defendant,] engaged in a 'high degree of involvement' in sending the faxes at issue.'"); *Merchant & Gould, PC v. Premiere Global Services, Inc.*, 749 F.Supp.2d 923 (D. Minn. 2010) (deferring to the FCC's interpretation of the TCPA and holding that the complaint pled "sufficient facts to support a claim that [defendants] were highly involved and not a mere conduit in the unwanted fax transmissions"); *Kopff v. Bataglia*, 425 F.Supp.2d 76 (D.D.C. 2006) (holding that the FCC's interpretation of the TCPA was due "substantial deference" and finding that plaintiffs' allegations that defendant was "more than a mere conduit for the faxes they received and . . . had a high degree of involvement in, and actual notice of, the allegedly unlawful activity and nonetheless failed to take steps to prevent it" were sufficient to overcome a motion to dismiss); *see also Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, LP*, 329 F.Supp.2d 789, 805 (M.D. La. 2004) (In holding that the TCPA was not void for vagueness, the Court found that persons of common intelligence could understand the statute's prohibition, in light of the FCC's clear and unequivocal "limiting statutory construction."). *But see Texas v. American Blastfax*, 121 F.Supp.2d 1085, 1089-1090 (citing *In re the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12,391 at 12,407-408 (1995)) (In this case, which predates

---

TCPA's private right of action."). There, the statute provides that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State." § 227(b)(3). Determining what courts have jurisdiction over private actions under §227(b)(3) involves determining the scope of judicial power, a task which *City of Arlington* and *Adams Fruit* both entrust to the judiciary and not executive agencies. In *Mims v. Arrow Financial Services, LLC*, the Supreme Court exercised this judicial power when it held that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA. 132 S.Ct. 740 (2012).

the current FCC rule, the Court refused to uphold an FCC opinion, which held that fax broadcasters were not liable under the FCPA. Instead, the Court found that a fax broadcaster would be liable if it acted as "more than a mere conduit for third party faxes."); *Shelton v. Cyberdata, Inc.*, 2007 TCPA Rep. 1697 (Mich. Cir. Sept. 24, 2007) (holding that the FCC does not have any authority to prescribe the fax broadcaster exemption because the TCPA only grants it the authority to "implement the *requirements* of the Act.").

Having found that the FCC rule provides a reasonable interpretation of an ambiguity in the TCPA, this Court, like its sister courts, defers to the FCC's construction of the statute and finds that "a facsimile broadcaster will be liable . . . if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent [prohibited] facsimile transmissions." 47 C.F.R. § 64.1200 (a)(4)(vii).

Plaintiffs' motion for summary judgment was based solely on its contention that "as a matter of law . . . any person who sends an unsolicited fax ad in violation of the TCPA may be liable under the TCPA, regardless of whether the person is also liable under the FCC regulations as a 'fax broadcaster,' and regardless of whether the person has a high degree of involvement or actual knowledge of the violations they took part in or caused." (ECF No. 45 at 1-2). As a result, in light of this Court's finding that the FCC rule is entitled to deference under *Chevron*, Plaintiffs' motion for partial summary judgment of j2 Canada's tenth special defense will be DENIED.

## IV. Conclusion

Accordingly, an order shall issue GRANTING Defendant j2 Global Canada's motion for reconsideration (ECF No. 62) and DENYING Plaintiffs' motion for partial summary judgment (ECF No. 45).

Dated this 16 day of October, 2013

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
United States District Judge